**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALENE REED, individually and on behalf of all others similarly situated, | Civil Action No. 10-cv-5642 (DLC) |
| Plaintiff, | |
| v. | |
| CONTINENTAL GUEST SERVICES CORPORATION, | Filed Electronically |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff respectfully submits this Memorandum of Law in support of her Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.   BACKGROUND OF THE LITIGATION

Class Representative Valene Reed ("Plaintiff") filed the instant action on July 26, 2010. On behalf of herself and other putative class members, Plaintiff alleges that Continental Guest Services Corporation ("CGS" or "Defendant") violated the Fair and Accurate Credit Transaction Act , 15 U.S.C. § 1681 *et seq* ("FACTA"). Specifically, Plaintiff alleges that CGS violated 15 U.S.C. § 1681(g)(1) which provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

Defendant filed an Answer on October 19, 2010. Immediately thereafter, the Parties commenced discovery, including third-party discovery which spawned motions practice in the

United States District Court for the Western District of Pennsylvania.

Shortly after Plaintiff filed a motion to quash a third-party subpoena issued on behalf of Defendant in the Western District of Pennsylvania (and supporting memorandum of law), the Parties commenced settlement negotiations.  The Court imposed a December 17, 2010, filing deadline for Plaintiff's class certification motion, and the negotiations continued at the same time that Class Counsel prepared class certification papers in anticipation of the December 17 filing deadline.

On December 8, 2010, Class Counsel travelled to New York to meet directly with defense counsel, and the management of Defendant.  The Parties made substantial progress toward a possible class settlement during this meeting, but were not able to conclude a potential deal at that time.

On December 20, 2010, Class Counsel travelled to New York to participate in a settlement mediation overseen by Magistrate Judge Maas.  The Parties made significant additional progress toward a settlement at this mediation, but were not able to finalize a deal at that time.  However, the Parties continued negotiations telephonically and by e-mail, and were able to arrive at the basic structure of a class settlement during the second week of January, 2011.

The parties ultimately executed a Class Action Settlement Agreement ("Settlement Agreement") on or about February 10, 2011.[1]

Pursuant to this agreement, the Parties have agreed to certification, for settlement purposes only, of the following Class:

All persons who received electronically printed receipts from CGS at the point of

---

[1] A copy of the Settlement Agreement is appended to the Joint Motion for Preliminary Approval as Exhibit A.

   sale or transaction, in a transaction occurring between June 3, 2008, and [DATE
   OF PRELIMINARY APPROVAL], and wherein the receipt displayed (1) more
   than the last five digits of the person's credit card or debit card number, and/or (2)
   the expiration date of the person's credit card number.

Expressly excluded from the Class are any individuals who suffered identity theft as a result of the FACTA violation at issue.

## II.  THE TERMS OF THE SETTLEMENT

   Plaintiff alleges that between June 3, 2008 and [DATE OF PRELIMINARY APPROVAL] Defendant's Point of Sale Equipment was not programmed to truncate the expiration dates from the receipts that were presented to their customers who made purchases with a credit or debit card.  As a result, approximately 75,000 different consumers were presented with receipts wherein the expiration date of their credit or debit card was displayed. Defendant vehemently maintains that it did not willfully violate FACTA's truncation requirements and that, on the contrary, it took specific steps to fully comply with FACTA.

   The Parties agree that neither Plaintiff, nor any putative Class Member, has suffered any actual monetary injury as a result FACTA claims at issue.

   Against this backdrop, and in the interest of avoiding protracted and costly litigation, Defendant has agreed to a proposed settlement with the following basic terms:

   Defendant has agreed to enter into a Consent Decree, pursuant to which it will remain in full compliance with the truncation requirements of FACTA.  A proposed Consent Decree will be submitted to the Court in advance of the Fairness Hearing.

   In addition, Defendant has agreed to provide to each Participating Claimant a Settlement Relief Voucher good for the following:  1)  a Disney Lion King show poster (retail value $15-$17 dollars;  2) a discount of $10 from any theatre ticket purchased through CGS;  3)  a $3.25 discount from any sightseeing service offered by CGS;  and,  4) a discount of $1.25 from any

3

standard transportation service offered by CGS under $40, and a discount of $3.00 from any standard transportation service offered by CGS over $40.  These various Settlement Relief options are cumulative.  That is, a Settlement Relief Voucher shall entitle a Participating Claimant to any or all of the Settlement Relief options set forth above.

<u>GUARANTEED DISTRIBUTION:</u>  In the event that less than 15,000 Class Members submit claims, CGS will distribute Walt Disney Lion King posters to customers who pay for services with a debit or credit card at its concierge stations until a total of 15,000 posters have been distributed.  Further, irrespective of how many claims are actually submitted, CGS guarantees that it will offer 150,000 discount codes on its website for a one year period which will entitle users who pay for services with a debit or credit card online to settlement relief options 2-4 set forth above.

Further, Defendant has agreed to pay for the publication of Class Notice, a Plaintiff incentive award in the amount of $1,500 and Class Counsel fees and allowable Litigation costs and expenses of $82,000.

### III. ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District courts throughout the country have routinely approved similar class settlements of FACTA actions.  *See, e.g.*, *Dudzienski v. GMRI, Inc.*, 07-cv-3911 (N.D. Ill. July 17, 2009);  *Leowardy v. Oakley, Inc.*, 07-cv-53 (C.D. Cal. Nov. 24, 2008);  *Soulalian v. Int'l Coffee & Tea, LLC*, 07-cv-502 (C.D. Cal. July 2, 2010);  *Todd v. Retail Concepts,* 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008);  *Halperlin v. Interpark, Inc.*, 07-cv-2161 (N.D. Ill. Jan. 28, 2009);  *Hall v. Music & Dance Theatre Chicago, Inc.*, 08-cv-7061 (N.D. Ill. Mar. 26, 2010); *Long v. Joseph-Beth Group, Inc.*, 07-cv-443 (W.D. Pa.) (Cercone, J./Hay, M.J.); *Klingensmith v.*

*Max & Erma's Restaurants*, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) (Lenihan, J.); *Sinatra v. Coventry Restaurant Systems, Inc d/b/a Hyde Park Steak House.*, 07-cv-445 (W.D. Pa.) (Schwab, J.); *Ehrheart v. Pro Nebraska, Inc. d/b/a Pro Image*, 07-cv-447 (W.D. Pa.) (Lenihan, J.); *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center*, 07-cv-321 (W.D. Pa.) (Schwab, J.); *Reed v. Whole Enchilada, Inc. d/b/a big Burrito Restaurant Group*, 07-cv-357 (W.D. Pa.) (Fischer, J.); *Palamara v. Kings Family Restaurants,* 07-cv-317 (W.D. Pa) (Lancaster, J.); *Curiale v. Hershey Entertainment & Resorts Company*, 07-cv-651 (M.D. Pa.) (Kane, J.); *Ehrheart v. Pfaltzgraff Factory Stores, Inc.*, 07-cv-01433 (E.D. Pa.) (Padova, J.); ; *Carusone v. Joe's Crab Shack Holdings, Inc.*, 07-cv-320 (W.D. Pa.) (Lenihan, J.); *Goldin v. Uni-Marts, LLC*, 07-cv-666 (W.D. Pa.) (Fischer, J.).

All of these cases were settled on terms similar to those in the proposed settlement that is now before this Court.

### IV.     CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has confirmed not only the viability, but the desirability, of such settlement classes. *See, Amchem Prods. V. Windsor*, 521 U.S. 591 (1997). So, too, have the federal courts of appeal. *See, e.g.*, *In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283 at 316 (3d Cir. 1998)("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). In addition, when considering certification in the context of a settlement class, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

In cases such as this, involving issues of consumer protection, courts have consistently held that the use of the class action mechanism is "desirable and should be encouraged."

*Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980); *Gordon v. Boden*, 586 N.E.2d 461 (Ill.App.Ct. 1991), *cert. denied.*, 506 U.S. 907 (1992)("[i]n a large and impersonal society, class actions are often the last bastion of consumer protection").

### A. The Rule 23(a) Prerequisites Are Satisfied

The four prerequisites of Rule 23(a) are that:

(1) the class be so numerous that joinder of all members is impracticable;

(2) there be questions of law or fact common to the class;

(3) the claims or defenses of the representative parties be typical of the claims or defenses of the class; and,

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Frank v. Eastman Kodak Company*, 228 F.R.D. 174, 180 (W.D.N.Y. 2005).

#### 1. Numerosity

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proper inquiry is whether such joinder is impracticable, not whether it is impossible. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *see also,* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992)("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.")

Defendant acknowledges that there are thousands of transactions at issue. With a class of this size, joinder would be impracticable and the existence of numerosity is, therefore, readily apparent.

### 2. Commonality and Typicality

To maintain a class action, there must be "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2)(emphasis added). Rule 23(a)(3) of the Federal Rules of Civil procedure requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." As the Second Circuit has explained:

> The crux of both requirements is to ensure that maintenance of a class action is economical and the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. Typicality, by contrast, requires that the claims of the class representative by typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)(internal quotations and citations omitted).

Commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 153 (S.D.N.Y.2002) (citation and internal quotation marks omitted). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y.1992). Here, Plaintiff's Complaint specifically lists the common issues implicated by her claims.

In addition, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Typicality need not be complete. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named

7

plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir.1999). *See also Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y.2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.").

Thus, the commonality and typicality requirements of Rule 23(a) are met by the proposed settlement class.

### 3.     Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties…fairly and adequately protect the interests of the class."  To determine whether a class representative is adequate, the Second Circuit has instructed that courts should inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000).

A class representative is "adequate" where he will "have an interest in vigorously pursuing the claims of the class, and have no interests antagonistic to the interest of other class members." *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  Here, there are no conflicts of interest or other antagonisms between Plaintiff, on the one hand, and Class Members, on the other.  All are individuals with the mutual incentive to establish the alleged violation of FACTA.  All class members were allegedly impacted by the practices at issue in an identical manner.

In addition, Plaintiff's counsel have provided fair and vigorous representation for the Class.  Plaintiff's Counsel have substantial experience in similar consumer class action litigation

and have regularly been deemed to be adequate class counsel.[2] *See Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at * 3 (S.D.N.Y. May 28, 2009)(adequacy requirement met where class counsel has "an established record of competent and successful prosecution of large…class actions, and the attorneys working on the case are likewise competent and experienced in the area.").

Thus, the adequacy requirement of Rule 23(a)(4) is readily satisfied.

### B. The Requirements Of Rule 23(b) Are Satisfied

Rule 23(b) provides in pertinent part:

(b)     **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

*****

(3)     the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are satisfied here for settlement purposes.

#### 1. Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594. The Supreme Court then noted that the predominance requirement is easily met in cases, such as this one, alleging a uniform violation of a consumer protection statute. *Id.* at 2250. Defendant does not oppose the issue for settlement purposes here. Thus, this case meets

---

[2] *See* Declaration of Bruce Carlson attached to the Preliminary Approval Motion as Exhibit 2.

the requirement.  *See*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Blackie v. Barrack,* 542 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct.  These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues.  *In re Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997)("*Prudential I*")(citing numerous other cases).

Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's alleged noncompliance with the FACTA.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also*, *Prudential I*, 962 F.Supp. at 516.

Therefore, the predominance requirement is easily satisfied in this and other similar cases.

### 2. A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

It is well-accepted that the class-action mechanism generally provides the superior approach to handling statutory consumer protection claims.  *See, e.g., Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981).  Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already commenced by or against  members of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (D)  the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a.     Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective.  The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed.  *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery.  Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful, and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant presents many of these elements.  The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner.  *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155 (1982).  The claims at issue here are such that class relief is the only realistic alternative to no

11

relief at all, for the vast majority of Class Members.  *Prudential I*, 962 F.Supp. at 522-23.  This factor thus plainly supports certification for settlement purposes.

### b. The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class

There are no other pending class actions against Defendant asserting the claims here in dispute.  Therefore, this factor supports settlement class certification.

### c. This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient.  *Shutts*, 472 U.S. at 811-812

### d. Manageability

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial.  *Amchem*, 521 U.S. at 620; *Prudential II,* 148 F.3d at 316 n. 57.  Therefore, the Court need not consider manageability as part of its settlement approval calculus.

## V. THE COURT SHOULD ISSUE THE PROPOSED ORDER PRELIMINARILY APPROVING THE SETTLEMENT

Review of a proposed class action settlement generally occurs in two steps.  In the first instance, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  *Manual for Complex Litigation* (Fourth) § 21.632 (2004).  Additionally, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms

and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*  If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

The proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation.  Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length bargaining between experienced counsel, and does not evidence unduly preferential treatment or other obvious deficiencies.  Therefore, the proposed settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising class members of their opportunity to participate in the settlement, or to opt-out from or object to the settlement.

### A. Strong Judicial Policy Favors Preliminary Approval Of The Proposed Settlement

A strong judicial policy exists for encouraging settlements before trial.  *In re W. Union Money Transfer Litig.*, No. 01-0335 (CPS), 2004 U.S. Dist. LEXIS 29377, at *56 (E.D.N.Y. Oct. 18, 2004).  "[S]ettlements with terms that are fair, adequate, and reasonable actually serve the public interest and conserve judicial resources." *See, e.g., Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) ("the public interest in amicable resolution of cases is particularly strong" in class action litigation); *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 190 (2d Cir. 1990) ("Courts are wary of disturbing settlements,

13

because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits").

The proposed settlement in this case enjoys a presumption of fairness because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 90 (2002); *Manual for Complex Litigation* (Third) § 30.42 (1995).

Counsel for Plaintiffs and the putative class have significant experience in class action litigation, generally, and class-based consumer litigation, specifically. *See* Declaration of Bruce Carlson attached to the Preliminary Approval Motion as Exhibit 2. The parties have negotiated a proposed settlement that they respectfully submit warrants preliminary approval so that the Class may be notified of the proposed Settlement and provided with an opportunity to participate in, opt-out from or object to the proposed Settlement.

    **B.**    <u>**The Substantial Risks Of Continued Litigation**</u>

While Class Counsel continues to believe that Plaintiff's statutory claims are meritorious, Plaintiff and the Class face real risks if this litigation continues. Their ability to recover statutory damages is dependent upon a demonstration that Defendant's alleged violation of FACTA was willful, an exercise that Class Counsel believes would be challenging under the circumstances. Further, there are potential issues regarding whether a potential class-based award of statutory damages would comply with Due Process, because said award would potentially be untethered to any actual economic injury by the members of the Class. In other words, Defendant is facing a

potential statutory damage award of $75,500,000 in a case where no class member has sustained any economic harm and that dynamic raises potential Due Process issues which might in turn cause superiority issues under Fed. R. Civ. P. 23(b)(3).  These are among the myriad issues that Plaintiff would face if the litigation continued and this fact weighs in favor of settlement.

### C. The Proposed Notice To Putative Class Members Is Appropriate

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method.  *See Franks v. Kroger Co., 649 F.2d 1216, 1222-23* (6th Cir. 1981), *modified on other grounds on rehearing*, 670 F.2d 71 (6th Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6.  The notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

In this case, after careful discussion and consideration, the Parties agree on the content and methods of notice.  The parties concur that direct mail notice is untenable in this action for two primary reasons:  First, it would be extraordinarily difficult -- if not impossible -- to obtain mailing addresses for the thousands of putative class members implicated by the proposed settlement.  This is because the subject address data does not exist in any single depository.  Instead, the information is within the possession of a substantial number of issuing banks which issued debit or credit cards to Plaintiffs and the putative class.  It is unlikely that any of these institutions would divulge their customers' personal information voluntarily, so it would be necessary to seek Court Orders directed to all of these institutions.  Second, the cost of direct mail notice in this case would be prohibitive.

Therefore, the Notice set forth in the Settlement Agreement represents the best practicable notice in the context of the claims in dispute. A copy of the proposed Notice is appended to the Settlement Agreement.

Federal Rule of Civil Procedure 23(c)(2)(B) states, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ." Rule 23(e)(B) similarly requires, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

As for the content of the Notice, Rule 23(c)(2)(B) provides:  The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the class member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed form of notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of Class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so, and warns of the binding effect of the settlement approval proceedings on people who remain in the Class. In addition, the Notice describes the terms of the proposed settlement and provides contact information for Plaintiffs' Counsel, as well as identifying the fee that they propose to request from the Court. The Notice also discloses the time and place of the

Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing at the hearing. The contents of the notice therefore satisfy all applicable requirements.

## VI.     CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed class action settlement; (2) certify the proposed settlement class, for settlement purposes only, subject to Plaintiff's obligation to demonstrate that the class satisfies all of the applicable requirements of Fed. R. Civ. P. 23 prior to final approval of the proposed settlement;  (3) authorize the publication of Class Notice; and, (4) schedule a final approval hearing approximately ninety (90) days after the Class Notice is published to the Class Members.

Respectfully Submitted,

/s/ Robert B. Calihan
Robert B. Calihan, Esquire
rcalihan@calihanlaw.com

CALIHAN LAW
16 W. Main Street
Rochester, N.Y. 14614
(p)(585) 232-5291

/s/ Bruce Carlson
R. Bruce Carlson, Esquire
(*admitted pro hac vice*)
bcarlson@carlsonlynch.com

CARLSON LYNCH LTD
231 Melville Lane
P.O. Box 367
Sewickley, PA 15143
(p) (412) 749-1677
(f) (412) 749-1686

Counsel for Plaintiff