UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                  :

VALERIE REED, individually and on    :
behalf of all others similarly      :
situated,                             :
                                  :

                 Plaintiff,    :    10 Civ. 5642 (DLC)
                                  :
           -v-                :    OPINION & ORDER
                                  :
CONTINTENTAL GUEST SERVICES     :
CORPORATION,                   :
                                  :
               Defendant.    :
                                  :
----------------------------------------X

Appearances:

For Plaintiff:
Robert B. Calihan
Calihan Law
16 W. Main Street
Rochester, NY 14614

Bruce Carlson
Carlson Lynch Ltd.
231 Melville Lane
P.O. Box 367
Sewickley, PA 15143

For Defendant:
Steven J. Shore
Mark Arthur Berman
William Andrew Jaskola
Ganfer & Shore, LLP
360 Lexington Ave., 14th Floor
New York, NY 10017

DENISE COTE, District Judge:

    Plaintiff Valerie Reed ("Reed") seeks preliminary approval

of a class action settlement in a lawsuit filed pursuant to the

Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). This Opinion describes issues which require further scrutiny before preliminary approval may be granted.

BACKGROUND

Reed filed this action on July 26, 2010 against defendant Continental Guest Services Corporation ("Continental"), alleging that it had violated the provision of FACTA which directs that, as of December 4, 2006,

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

15 U.S.C. §§ 1681c(g)(1), (3). Individuals who "willfully fail[] to comply" with this requirement are subject to civil liability for:

> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or . . .
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability . . . the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

Continental, a corporation headquartered in New York, provides concierge services for visitors to New York City.

Tourists are able to make hotel, theater, transportation, and dining arrangements through Continental's services.

After engaging in settlement discussions before Magistrate Judge Frank Maas, the parties agreed to a settlement on February 10, 2011.  The proposed settlement class is defined as

> All persons who received electronically printed receipts from [Continental] at the point of sale or transaction, in a transaction occurring between June 3, 2008, and [Date of Preliminary Approval], and wherein the receipt displayed (1) more than the last five digits of the person's credit card or debit card number, and/or (2) the expiration date of the person's credit card number.

The proposed settlement excludes any individual who suffered identity theft as a result of a FACTA violation.

Reed asserts that she can show that Continental presented approximately 75,000 consumers with receipts displaying the expiration date of their credit or debit card in violation of FACTA.  The parties agree that no class member has suffered any monetary injury as a result of the FACTA violation.  Continental contends that it took steps to comply with FACTA and that it did not willfully violate the statute.

The proposed settlement would provide participants in the settlement with a voucher entitling each of them to any or all of the following:  1) a Lion King poster; 2) a discount of $10 from any theatre ticket purchased through Continental; 3) a $3.25 discount from any sightseeing service offered by

Continental; and 4) a discount of $1.25 from any standard transportation service offered by Continental under $40, and a discount of $3.00 for any standard transportation service offered by Continental over $40.  To obtain these benefits, class members would have to fill out a short form and mail it to a Pennsylvania address.

As additional components of the settlement, Continental will offer 150,000 discount codes on its website for one year, entitling 150,000 users who pay for services online with a debit or credit card to receive any or all of the discounts described above.  Finally, in the event that fewer than 15,000 class members submit vouchers, Continental will distribute 15,000 posters to customers for free.

Continental has also agreed to pay for publication of the class notice, a $1,500 incentive award for the named plaintiff, and plaintiff's counsel's fees and costs.  The settlement agreement grants Continental the option of terminating the agreement if more than 10 class members opt out of the settlement.


DISCUSSION

There are, of course, many reasons why a settlement in this action should be preliminarily approved.  The legal and factual issues lend themselves to class action treatment:  there are

common issues that are efficiently addressed through a class action.  See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).  There is also a strong preference in the law for the resolution of class action litigation through settlement. McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009).  Nonetheless, a court has an independent obligation to review the terms of a settlement to determine whether the settlement is "fair, reasonable, and adequate."  Id. (citation omitted).  The court must examine the negotiating process leading up to the settlement to ensure procedural fairness and must also scrutinize the terms of the settlement to ensure substantive fairness.  Id. at 804.  Because of this independent, fiduciary duty to absent class members, a few observations are in order before preliminary approval may be given here.

There are several concerns about the nature of this litigation and the terms of the proposed settlement that require careful evaluation.  They include the evidence that this litigation is driven principally by lawyers and their desire to obtain an award of attorneys' fees pursuant to FACTA rather than any real injury to a consumer; and the inability to give individualized notice or relief to class members.

This litigation appears to be entirely lawyer-driven. Indeed, Reed's law firm has brought a series of similar FACTA lawsuits, primarily in the Districts of Western and Eastern

Pennsylvania.  See e.g., Long v. Tommy Hilfiger U.S.A., Inc.,
No. 09 Civ. 1701 (JFC), 2011 WL 635271 (W.D. Pa. Feb. 11, 2011);
Hanlon v. Aramark Sports, LLC, No. 09 Civ. 465 (GL), 2010 WL
374765 (W.D. Pa. Feb. 3, 2010); Curiale v. Lenox Group, Inc.,
No. 07 Civ. 1432 (RBS), 2008 WL 4899474 (E.D. Pa. Nov. 14,
2008); Bell v. Alltel Communications, Inc., No. 08 Civ. 648
(ARH) (W.D. Pa. Oct. 17, 2008).  In this case, Reed was
apparently sent to New York by agents of Reed's law firm to find
a violation of FACTA.  In the event the class certification
motion were to be litigated, there is a serious question whether
Reed would be found to be an adequate representative of the
class and whether her claims would be typical of those of absent
class members.  See In re JPMorgan Chase & Co. Derivative
Shareholder Litig., No. 08 Civ. 974 (DLC), 2008 WL 4298588, at
*8-*10 (S.D.N.Y. Sept. 19, 2008) (noting concern over phenomenon
of the "professional" class plaintiff).  As further indicia that
this litigation is principally prompted by a desire for
attorneys' fees, there has been no economic injury to any class
member, as Reed freely admits, and no evidence of any willful
violation of the statute.  Indeed, Reed concedes that even if a
willful violation could be proven, an award of statutory damages
in the amount of $75 million would raise substantial
constitutional issues in the absence of evidence of economic
injury.

The problematic features of this class action settlement extend as well to the issue of notice.  The parties agree that direct notice by mail to class members is "untenable."  There is no single depository containing the mailing addresses for the 75,000 or so class members; the address information is held by the many banks that issued the debit or credit cards to the class members; and the cost of obtaining their addresses and sending notice to them would be prohibitive.  The parties propose that notice be published twice in the weekday edition of the New York Post, but they have not attempted to show that this form of notice is likely to reach the class members.  Most if not all of the class members presumably do not reside in New York City and are unlikely to read a New York-based publication.

Finally, the proposed settlement is essentially a coupon settlement, bringing with it many if not all of the well-documented problems associated with such settlements.  Congress voiced its concern over coupon settlements when it amended the Class Action Fairness Act of 2005 to call for judicial scrutiny of attorneys' fees awards in coupon cases.  See 28 U.S.C. § 1712.  The Seventh Circuit has noted that coupon settlements "raise suspicions" because "coupons serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire."  In the Matter of Mexico Money Transfer

Litig., 267 F.3d 743, 748 (7th Cir. 2001).  At least one district court has indicated that coupon settlements in FACTA cases warrant close scrutiny.  See Reibstein v. Rite Aid Corp., No. 09 Civ. 2734 (ECR), 2011 WL 192512, at *1 (E.D. Pa. Jan. 18, 2011).

Under the proposed settlement, the only persons who will get cash will be Reed's counsel and Reed.  Because many of the class members are assumed to be out-of-town visitors to New York City, there is a substantial question of whether any of them could actually benefit from the vouchers that would be provided to them as part of the settlement, or whether they would choose to fill out the form and mail it to Pennsylvania to receive the voucher.  But, even if a class member could benefit from the voucher and would take the time to fill out the form and apply for a voucher, as already noted, there is a substantial question of whether the class member would ever learn about the settlement since there will be no individualized notice.  Thus, while research has estimated the rate of participation in coupon settlements as somewhere in the neighborhood of 26%, see Christopher R. Leslie, The Need to Study Coupon Settlements in Class Action Litigation, 18 Geo. J. Legal Ethics 1395, 1396-97 (2005), even that figure will in all likelihood grossly overstate the level of participation here.

To compensate for the substantial likelihood that the "benefit" offered to class members is completely lacking in value, the parties propose that Continental provide posters and discounts to current and future customers.  This will provide some value to consumers and perhaps even fortuitously to a few class members.  It is hard to judge the value from these free posters and discounts, however, since the demand for the posters may be quite limited and Continental can simply raise its prices to offset the revenue lost from any use of the discount codes by on-line customers.  It may be, therefore, that the settlement will operate more as a promotional campaign, as is somewhat common among coupon settlements.  <u>Id</u>. at 1397.

Aware of these troubling aspects of the proposed settlement, it is nonetheless useful to ask "whether the value of relief in the aggregate is a reasonable approximation of the value" of plaintiff's claim.  <u>In the Matter of Mexico Money Transfer Litig.</u>, 267 F.3d at 748.  In this case, where the claims appear to have little more than nuisance value, <u>id</u>., the fact that the class (or rather a group of other Continental customers who will act as proxies for the class) will receive little or no compensation may not prevent approval.  It cannot escape notice, however, that the principal beneficiaries of this litigation and settlement are the named parties and their counsel, and not absent class members.  The attorneys get paid

and Continental receives protection through a release from
another strike suit.

In evaluating the substantive fairness of a class action
settlement in this Circuit, the Court must consider the nine
Grinnell factors:

> (1) the complexity, expense and likely duration of the
> litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of
> discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the
> trial;
> (7) the ability of the defendants to withstand a greater
> judgment;
> (8) the range of reasonableness of the settlement fund in
> light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of
> litigation.

McReynolds, 588 F.3d at 804 (citing City of Detroit v. Grinnell
Corp., 495 F.2d 448, 463 (2d Cir. 1974)).  Here, the litigation
is unlikely to be particularly complex, although as noted above,
Reed concedes that it would be difficult to prove a willful
violation of the statute.  The lawsuit is still in its infancy,
as discovery has barely commenced.  The risks of establishing
liability and damages may be great in light of Reed's inability
to prove a willful violation.  On the other hand, the risk of
maintaining the class action through trial is probably slight,
other than for the issues regarding adequacy of the class

10

representation as highlighted above.  The ability of the
defendants to withstand a greater judgment is unknown.  Finally,
as discussed above, although the economic value of the
settlement is miniscule at best, it is reasonable in light of
the fact that there is no known economic injury to the class.

While the economic terms of the proposed settlement may
warrant approval, there are at least three terms of the
settlement agreement that are unlikely to receive approval:  (1)
the proposed incentive payment to Reed as class representative;
(2) the proposed method of publishing notice in the New York
Post; and (3) a commitment to pay a pre-determined amount in
attorneys' fees.

Incentive payments to class representatives raise "grave
problems of collusion." Women's Comm. for Equal Emp't
Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 180 (S.D.N.Y.
1977).  Representative plaintiffs "undertake to represent not
only themselves, but all members of the class, in a fiduciary
capacity, and are obligated to do so fairly and adequately, and
with due regard for the rights of those class members not
present to negotiate for themselves."  Id.  When the settlement
provides for the named plaintiffs to receive a cash payment not
shared by the other class members, "a serious question arises as
to whether the interests of the class have been relegated to the
back seat." Id.  As already seen, Reed is recommending a

settlement that provides no realistic expectation that any absent class member will actually receive a benefit from the settlement.  Moreover, in this case, the collusion to which Women's Committee alludes appears to have existed from the commencement of the litigation.  Reed was apparently sent to New York City by Carlson Lynch Ltd. to create the factual predicate for the filing of this lawsuit.  Thus, the Court is unlikely to approve any incentive payment to Reed.

The parties' proposed method of publishing notice of the settlement to absent class members also raises substantial concerns.  Rule 23(c)(2), Fed. R. Civ. P., requires that members of a Rule 23(b)(3) class be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Substitution of notice by publication for individualized notice will only be approved where there is a showing that members of the class are "unknown and [cannot] be located through reasonable efforts."  In re Agent Orange Product Liability Litig., 818 F.2d 145, 168-69 (2d Cir. 1987).  The parties have failed to address the legal standard for substituted notice or to explain why publication of notice in the New York Post is the "best notice practicable under the circumstances."

Finally, the Court will, as is customary, reserve judgment on the entry of attorneys' fees until the fairness hearing.  It

should be noted at this stage, however, that the settlement
agreement provides that Continental will pay Reed's counsel a
flat fee of $82,000, albeit "[s]ubject to Court approval."  In
signing the settlement agreement, Continental "agree[d] to
support" that request.[1]  These clauses are striking in that the
precise amount to be awarded in attorneys' fees is indentified
and is supported by Continental.  Customarily, a settlement
agreement contains a cap on the amount of fees to be requested,
and a commitment by the defendant to take no position on the
issue.  When "the issue of attorney's fees [is left] to the
discretion of the District Court," that is some evidence that
the settlement is not "the product of bad faith or collusion."
McReynolds, 588 F.3d at 804 (citation omitted).  Thus, if the
parties have agreed that the settlement is contingent on the
payment of $82,000 to plaintiff's counsel, and that it is not a
matter for the Court to determine, that may also weigh against
preliminary approval of the settlement.


CONLCUSION

A conference will be held to address the preliminary
approval of the settlement agreement of February 11, 2011, at

---

[1] The parties reserved the right to void the settlement agreement
in the event that it "is not substantially approved by the
Court."  It is unclear whether they intend this right to
encompass the Court's refusal to approve payment of $82,000 in
attorneys' fees.

which time the parties will have an opportunity to address the
issues identified herein.


        SO ORDERED:

Dated:      New York, New York
            April 4, 2011


                                    _____
                                            DENISE COTE
                                    United States District Judge