UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VALENCE REED, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 10-cv-5642 (DLC) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CONTINENTAL GUEST SERVICES CORPORATION, | ) ) ) | Filed Electronically |
| Defendant. | ) ) ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER
SUPPORT OF PRELIMINARY APPROVAL AND IN RESPONSE TO
THE COURT'S OPINION AND ORDER DATED APRIL 4, 2011**

In its Opinion and Order dated April 4, 2011, the Court characterizes Plaintiff's claims as a "lawyer driven strike suit" and suggests that there are "three terms of the settlement agreement that are unlikely to receive [preliminary] approval":  (1)  the proposed incentive payment of $1,500 to Plaintiff Valene Reed;  (2)  the proposed method of notice;  and, (3)  the proposed amount of attorneys' fees.  Order and Opinion at 11.

Plaintiff respectfully submits this supplemental brief in response to the issues raised by the Court.

   A.   **The Enforcement Of FACTA Through Private Litigation - Which
        Congress Expressly Intended - Has Significantly Reduced One Of
        The Primary Conduits For Identity Theft.**

Since approximately 2007, The Department of Justice ("DOJ") has frequently intervened on behalf of Plaintiffs in private FACTA class actions.  In *Papazian v. Burberry Limited*, 07-cv-

1

1479, (C.D. Cal.), for example, the DOJ filed a brief which, among other things, explained the

purpose of FACTA as follows:

> Congress sought with FACTA to 'assist [] consumers in preventing identity theft and for mitigating its consequences once the crime has occurred.' *See* 108 H. Rep. No. 263 (2003). The goal of the provision that became §1681c(g) was 'to limit the opportunities for identity thieves to 'pick off' key card account information.' S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts . . . .
>
> Defendant claims that expiration dates accompanied only by truncated card numbers need no protection from would-be fraudsters. Defendant submitted with its opposition to Plaintiff's motion the declaration of a former MasterCard employee who stated that a full expiration date and a truncated card number cannot be used to make fraudulent transactions . . . . Defendant also contends, based on the same declaration, that card companies routinely complete transactions with incorrect expiration dates so long as the expiration date provided to the merchant is in the future . . . . .
>
> Defendant's argument that a thief would not be able to make fraudulent charges using only a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card, until recently printed on Defendant's receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. (internal footnote omitted).
>
> Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants . . . .

*See* Brief of the United States in Support of 15 U.S.C. § 1681c(g), attached hereto as Exhibit 1,

at pages 13-16.

As discussed above, expiration dates are a critical security tool which permit merchants

to evaluate the legitimacy of credit/debit card transactions. If a customer provides an expiration

date that does not match the true date, the authorization may fail. Checking expiration dates and

protecting them from casual disclosure is an important method by which credit card companies, banks and merchants seek to prevent fraud.

To encourage robust private enforcement of FACTA's anti-identity theft provisions, Congress intended that FACTA plaintiffs could invoke the Fair Credit Reporting Act's civil liability provisions, which are codified at 15 U.S.C.A. §1681n. These provisions provide that in instances of willful noncompliance, a defendant shall be liable for statutory damages between $100 and $1,000, plus costs and attorneys fees.[1]

FACTA was phased in over three years and became fully effective in December 2006. The passage of FACTA was accompanied by substantial publicity, including Federal Trade Commission Bulletins to merchants. Some merchants were not in compliance by the effective date, and handful of class action lawsuits were filed (less than two hundred out of a universe of millions of American merchants) during the two year period following the effective date. Since that time, there have been very few new FACTA cases because after the first generation of litigation, the overwhelming majority of American merchants came into compliance with the law, precisely the result that Congress intended when it passed FACTA –and its accompanying private enforcement provisions--in the first instance.

In *In re JPMorgan Chase & Co. Derivative Shareholder Litig.*, No. 08-cv-974 (DLC), 2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008), this Court discussed at length the phenomenom of "professional plaintiffs" filing "strike suits" in the context of class-based securities and derivative litigation. As Congress has correctly recognized, and as this Court cogently discussed in the *JPMorgan Chase* opinion, securities/derivative litigation is susceptible to abuse through "strike suits," where a putative plaintiff immediately files a securities action following the

---

[1] The Supreme Court clarified the meaning of "willful" under the Fair Credit Reporting Act's civil damage provision in *Safeco Insurance v. Burr*, 551 U.S. 47 (2007), confirming that "reckless" conduct is sufficient to satisfy this standard.

dissemination of negative corporate news accompanied by a drop in stock price, or a derivative action challenging an inherently subjective decision of corporate governance.  In that context, there is a very real possibility that the named plaintiff might have interests which are not aligned with the interests of the putative class, thus threatening the adequacy of the named plaintiff as a class representative under Fed. R. Civ. P. Rule 23(a)(4).

However, Plaintiff respectfully submits that the securities/derivative scenario must be distinguished from cases like this one, where Congress has specifically sought to encourage private litigation by incentivizing counsel to serve as private attorneys general on behalf of consumers to facilitate the enforcement of specific consumer rights which cannot be adequately enforced solely by underfunded and overworked federal regulators.

### B.    Plaintiff Reed Is Not A "Professional Plaintiff."

At the time of the transaction at issue, Plaintiff Reed was travelling with non-party Nichole Ehrheart.  Because ***non-party Ehrheart*** has herself filed multiple FACTA lawsuits [2] – and because ***Ms. Ehrheart*** was with Ms. Reed at the time that Continental issued a printed receipt to Ms. Reed that violated FACTA's truncation requirements, Defendant expressed a belief at the Initial Case Management Conference that the claims in dispute might be "lawyer driven" and that this might impact Ms. Reed's adequacy as a named plaintiff.[3]  However, a plaintiff is not an inadequate class representative solely because she has filed multiple actions to enforce a federal consumer protection statute that expressly encourages enforcement by private class litigation.  More fundamentally, Ms. Reed - who has been a plaintiff in a single consumer class action (i.e. this case) - does not become an inadequate class representative because she

---

[2] Ms. Ehrheart has been a named plaintiff in approximately five consumer class actions.
[3] Ms. Ehrheart and Ms. Reed both purchased theatre tickets from Defendant.

4

happens to be friends with somebody who is both familiar with the requirements of FACTA and who has filed multiple actions under FACTA.

The seminal case on this issue is *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948, 954 (7th Cir. 2006), in which Judge Easterbrook stated:

> The district judge regarded 'Murray, her spouse, and their children [as] . ..professional plaintiffs.  GMAC claims that Murray, her spouse, and their children are participants in more than fifty assorted suits seeking compensation for technical violations of the FCRA [Fair Credit Reporting Act] which are all being handled by the same law firm.  Murray does not deny this fact in her reply.  This is . . . an indication that Murray and her counsel are merely seeking the 'quick buck' from a class settlement and are not truly interested in vindicating any of the rights of the proposed class members.'  Murray tells us that she has filed 'only' nine suits;  her husband and four children filed the rest.  Still, the Murrays are in this big time.  What the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise.  The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by fifty different persons may sue only a subset of the offenders.  Neither does GMAC.
>
> \*       \*       \*       \*
>
> Murray did not accept compensation to put herself in the way of injury—though 'testers,' who do this in housing and employment litigation, usually are praised rather than vilified.  (internal citations omitted) . . . .Her decision to sue everyone who accessed [her] credit history without her consent, rather than just a few, does not injure any other potential [class member].  Nothing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued but on a single offer.  Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions.

Other courts have consistently agreed with this analysis.  In *Armes v. Shanta Enterprise, Inc.*, 2009 WL 2020781, \*4 (N.D. Illinois, July 8, 2009), the court certified a FACTA class, rejecting defendant's "professional plaintiff" argument as follows:

> [T]he fact that plaintiff is involved in multiple lawsuits is not enough to make him inadequate to serve the class.
>
> Defendant argues that plaintiff differs from *Murray* [Murray v. GMAC Mortgage, *infra.*] because he has taken a more active role in pursuing litigation than the

5

plaintiff in *Murray*. However, defendant's argument is unpersuasive . . . . Although defendant implies plaintiff may have travelled to Illinois and Wisconsin to obtain receipts in violation of the statute, there is no evidence that this was the purpose for plaintiff's travels. Moreover, neither party suggests that plaintiff enticed defendant to print plaintiff's entire credit card number or visited the hotel intentionally to receive the receipt at issue. Thus, the court does not agree that the fact that [plaintiff] has been involved in multiple FACTA cases makes him unsuitable to represent the class.

Still other courts have recognized that the "professional plaintiff" label is often a red-herring. For example, in *Wiles v. Locateplus Holdings Corporation*, 2010 WL 3023909, *2 (W.D. Mo. August 2, 2010) the court rejected a "professional plaintiff" argument and granted class certification, stating:

> [Defendant] argues that Plaintiffs are not adequate class representatives because they are 'professional plaintiffs.' Plaintiffs are each named Plaintiffs in three other putative class action lawsuits . . . . Plaintiffs presence in this cluster of cases is not enough to render them the type of career class action plaintiffs that the Court would consider disqualifying . . . .
> [Defendant] notes that Plaintiff Wiles has been acquainted with one of his lawyers for seven years. Acquaintance with one's own lawyers is not a basis for disqualifying a named plaintiff.
>
> ***Turning to the relevant inquiry***, Plaintiffs have shown that their interests correspond to those of the putative class members. They share the class interest in procuring relief to address the alleged violation of the plaintiff's rights. There is no indication that their interest in procuring their own relief will be at the expense of other class members or will, in any other way, be antagonistic to the class interests.
>
> [P]laintiffs have shown that they will vigorously prosecute the class claims through competent counsel. It could be said that Plaintiffs' and class counsel's participation in parallel suits demonstrates their competence to vigorously pursue the interests of the class in that both Plaintiffs and counsel will have particular familiarity with these types of claims . . . . For purposes of this motion, Plaintiffs have shown that they and class counsel will fairly and adequately represent the class . . . .

*Emphasis added*.

In short, even if Ms. Ehrheart was the plaintiff in this action, the fact that she has participated in multiple FACTA lawsuits would not cause her to be an inadequate class

6

representative in this case.  More fundamentally, Ms. Ehrheart's status as an occasional plaintiff in consumer class litigation does not undermine Ms. Reed's adequacy as a class representative under Rule 23(a)(4).[4]  Ms. Reed does not possess a conflict of interest which would cause her claim to be materially dissimilar from the claims of absent class members.  Further, there has been no indication that she is in any way precluded from serving as a vigorous advocate of the class.

> 1. **An Incentive Payment Of $1,500 To Plaintiff Is Appropriate Under Second Circuit Authority.**

While it is true that a handful of older cases questioned  the award of incentive payments to named class representatives, more recent cases decided within the Second Circuit endorse the propriety of reasonable incentive payments.  *See, e.g., Dupler v. Costco Wholesale Corporation*, 705 F.Supp.2d 231, 245-246 (E.D. N.Y. 2010)(listing cases).  The proposed incentive payment to Ms. Reed in this case is at the low end of the range of payments that have been routinely approved by courts within the Second Circuit.  Prior to the fairness hearing in this matter, Plaintiff will file a comprehensive brief in support of Plaintiff's Motion for fees, costs and incentive payment, which will discuss this authority at length.[5]

> C. **Class Counsel Will Provide Full Support For Their Fee And Cost Request Of $82,000 In Advance Of The Fairness Hearing.**

Defendant in this case has agreed to pay up to a pre-determined amount of fees and costs (i.e. $82,000) to Class Counsel, ***subject to Court approval***.  *See* Settlement Agreement, attached as Exhibit 1 to Preliminary Approval Motion, at ¶ 2.6.1.  FACTA is a fee-shifting statute which

---

[4] Ironically, though it is not directly at issue here, Ms. Ehrheart's adequacy is manifest from the litigation results in FACTA cases where she has been the named plaintiff.  For example, in *Ehrheart v. Verizon Wireless* 609 F.3d 590 (3d Cir. 2010) she obtained reversal of a district court order refusing to enforce a class-based settlement.  In *Ehrheart v. Bose Corporation*, 2008 WL 64491, (W.D. Pa. Jan. 4, 2008), she defeated a summary judgment motion asserting an issue of first impression under FACTA.

[5] Incentive payments have been approved in connection with the settlement of many FACTA cases around the country.  A list of those cases will be provided to the Court in advance of the fairness hearing.

expressly provides for an award of fees and costs to a successful Plaintiff.  In advance of the fairness hearing, Plaintiff will submit Class Counsels' lodestar and costs, as well as a comprehensive brief outlining the propriety of their fee and costs request, analyzed under both FACTA's fee-shifting provision and relevant Second Circuit common fund authority.[6]

### D. The Proposed Notice To Class Members Will Be Revised.

While the Court has broad discretion regarding what constitutes reasonable notice under Fed. R. Civ. P. 23(e), the touchstone of appropriate notice that is sufficient to satisfy due process is practicability, not efficacy.  A recent FACTA case from the Northern District of Illinois includes an extensive analysis of this issue.

Specifically, in *Shurland v. Bacci Cafe & Pizzeria*, No. 08-C- 2259, 2010 WL 4513663, *3 (N.D. Ill., Nov. 2, 1010) the court stated:

> The due process inquiry in a Rule 23(b)(3) class, therefore, is whether the requirements of Rule 23(c)(2) have been met.  Rule 23(c)(2)(B) explains that for Rule 23(b)(3) class actions such as this one, 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort,' and explain the details of the action to those members, including the opportunity to opt out.
>
> [D]efendant urges that because the class members are not identifiable, they cannot be provided with personal notice and an opportunity to opt out. (Def.'s Mot. To Decert. at 8.) Direct notice is indeed ideal, but the requirement of "personal notice" does not mean that each individual who is potentially a member of the class must receive actual notice of the class action. Medina v. Manufacturer's & Traders Trust Co., No. 04 C 2175, 2004 WL 3119019, at * 3 (N.D. Ill. Dec. 14, 2004) (Rule 23(b)(3) class) ("This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice.").

---

[6] At footnote 1 of its Opinion, the Court states that "[t]he parties reserved the right to void the settlement agreement in the event that it 'is not substantially approved by the Court," and that "[i]t is unclear whether they intend this right to encompass the Court's refusal to approve payment of $82,000 in attorneys' fees."  However, Paragraph 1.8 of the Settlement Agreement states that "[a]ny proceeding or order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees or costs shall not, by itself, in any way delay or preclude the Judgment from becoming Final."  Consistent with this language, Plaintiff has retained the right to appeal an award of attorneys fees and costs for an amount less than $82,000, but such an appeal would not impact the Court's jurisdiction to otherwise grant final approval of the proposed settlement and enter a final judgment related thereto.

\*     \*     \*     \*

Where, as in this case, individual notice is not possible, other methods of contacting the class members may be utilized. As the Supreme Court has explained: "This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (discussing "best notice practicable" in the context of a common trust fund settlement). *Mullane* stands for the proposition that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212-13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (emphasis added). Though these cases predate the current version of Rule 23, the drafters of the Rule intended to incorporate the due process standards *Mullane* and *Schroeder* discussed. *See Eisen*, 417 U.S. at 173-74.

In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law. "When individual notice is infeasible, notice by publication in a newspaper of national circulation ... is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir.2004) (Rule 23(b) (3) class) ("[Individual] notice is preferable to newspaper or other collective notice but it was impossible here because [Defendant] has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter."). *See also In re Vivendi Universal*, S.A., 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ( Rule 23(b)(3) class) ("While individual notice, where reasonably possible, is required, when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."). There is, in short, no "single formula" that describes what effort is necessary to contact and notify members of a Rule 23(b)(3) class; instead, the "type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097-98 (5th Cir.1977) (Rule 23(b)(3) class).

\*     \*     \*     \*

As discussed above, notice by publication alone may be permissible when it is the best notice practicable.  Plaintiff asks this court to approve a one-time publication of class notice in the Chicago Sun-Times and publication on Class Counsel's website.

9

In proceeding with a Rule 23(b)(3) class, 'the court must direct to class members the best notice that is practicable under the circumstances . . . .  Here, many class members likely reside nearby Bacci's Berwyn location, so a variety of other means and methods for notice are available.  First, in addition to one-time publication in the Chicago Sun Times, the court assumes Plaintiff could publish notice in local publications that serve the Berwyn area . . . .  The court also suggests posting the class notice at Bacci, and posting a link to the class notice on Bacci's website . . . .

Variations on this approach have been followed and approved in connection with the class settlements of many FACTA cases, as well as many class settlements of claims under the Electronic Funds Transfer Act ("EFTA"), which present the same notice issues.  Some of these cases are described in the following chart:

| Case | Notice |
| --- | --- |
| *Batement v. WF Cinema Holdings, L.P.*, 07-cv-1021 (C.D. Ca.)(FACTA) | One time publication notice in Los Angeles Times and the Laguna Niguel/Aliso Viejo News.  In theatre notice.  Notice on defendant's website. |
| *Buechler v. Cutting Edge Pizza, L.L.C.*, 09-cv-801 (D. Md.)(FACTA) | One time publication notice in regional edition of USA Today and The Middletown Press.  In store notice. |
| *Halperin v. Interpark, Inc.*, 07-cv-2161 (N.D. Ill.)(FACTA) | One time publication notice in Chicago Tribune.  Notice at pay stations within parking garages.  Notice on Class Counsel website. |
| *Klingensmith v Max & Erma's Restaurants*, 2007 WL 3118505 (W.D.Pa.)(FACTA) | Publication on Sunday in leading newspaper in Atlanta, GA, Charlotte, NC, Cincinnati, OH, Cleveland, OH, Lansing, MI, Lexington, KY, Louisville, KY, Pittsburgh, PA and Chicago, IL. |

| Case | Notice |
|---|---|
| *Sinatra v. Coventry Restaurant Systems, d/b/a Hyde Park Steak House,* 07-cv-445 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in leading newspapers in Pittsburgh, Cleveland & Columbus. |
| *Ehrheart v. Pro Nebraska, Inc., d/b/a Pro Image,* 07-cv-447 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in Sports Section of Pittsburgh Post Gazette and Pittsburgh Tribune Review. |
| *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center,* 07-cv-321 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in leadings newspapers in Pittsburgh, PA, Cleveland, OH, Canton, OH, Akron, OH, Youngstown, OH, Parkersburg, WV, Springfield, OH, and Toledo, OH<br>Place Notice in Customer Bags for 45 days |
| *Reed v. Whole Enchilada, Inc. d/b/a big Burrito Restaurant Group,* 07-cv-357 (W.D. Pa.)(FACTA) | Publication once in daily newspaper in Pittsburgh, PA, State College, PA, Philadelphia, PA and Columbus, OH on day of Defendants' choosing, other than Sunday.<br>Promotional Advertisement published in student newspapers at University Pittsburgh, Ohio State University, Pennsylvania State University and University of Pennsylvania on 3 days beginning same week of Summary Notice.<br>Internet Notice placed by Defendant. |
| *Curiale v. Hershey Entertainment & Resorts Company,* 07-cv-651 (M.D. Pa.)(FACTA) | Publication once each weekday of *Harrisburg Patriot-News* and a weekend edition of *USA Today* (Mid-Atlantic region edition).<br>E-mail notice in a prominent location as part of a e-newsletter to designated recipients of Hershey's SWEETMAIL.<br>Website. |

| Case | Notice |
|---|---|
| *Ehrheart v. Pfaltzgraff Factory Stores, Inc.*, 07-cv-01433 (E.D. Pa.)(FACTA) | Publication once in the "Life" section of the national Monday edition of *USA Today*.<br>On-site notice on all Pfaltzgraff Factory Stores Cash registers for 30 days.<br>Website. |
| *Long v. Joseph-Beth Group, Inc.*, 07-cv-443 (W.D. Pa.)(FACTA) | Publication once in leading newspapers of general circulation in Charlotte, NC, Cincinnati, OH, Cleveland, OH, Lexington, KY, Memphis, TN, Nashville, TN and Pittsburgh, PA.<br>On-site notice at stores at issue for 30 days. |
| *Carusone v. Joe's Crab Shack Holdings, Inc.*, 07-cv-320 (W.D. Pa.)(FACTA) | Publication twice in consecutive weekend editions in the Legal Notice section of *USA Today*.<br>On-site notice (sign) posted at vestibule of all restaurants at issue.<br>Internet hosted by Defendant for 75 days. |
| *Palamara v. Kings Family Restaurants*, 07-cv-317 (W.D. Pa)(FACTA) | Publication twice on consecutive Sundays in Lifestyle Section (On the Go) of the *Pittsburgh Post-Gazette* and *Steubenville Herald Star* and *Altoona Mirror*. |
| *Howard v. The Canandaigua National Bank and Trust Co.*, 09-cv-6513 (W.D.N.Y.)(EFTA) | Publication notice one time in *Democrat and Chronicle*.<br>Notice on Website hosted by Class Counsel. |
| *Parker v. Suntrust Bank*, 09-cv-706 (M.D.Tenn.)(EFTA) | Publication notice two times in the *Tennessean*.<br>Posted Notice on ATMs at issue.<br>Notice on website hosted by Defendant. |
| *Parker v. First-Citizens Bank and Trust*, 09-cv-00588 (M.D.Tenn.)(EFTA) | Publication notice two times in *Tennessean*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Defendants. |

| Case | Notice |
|---|---|
| *Popovic v Dollar Bank*, 10-cv-432 (W.D. Pa.)(EFTA) | Publication notice one time each in *Sun Star & Courier, Sun Post & News Sun, News Herald, North Journal & McKnight Journal & Pennysaver (Corapolis/Moon)*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Nolf v. Allegheny Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(EFTA) | Publication notice one time in *Pittsburgh Post-Gazette*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Dover v. GNC Federal Credit Union*, 09-cv-810 (W.D.Pa.)(EFTA) | Publication notice one time in *New Castle News*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Dragotta v. Northwest Bancorp, Inc. d/b/a Northwest Savings Bank*, 09-cv-632 (W.D. Pa.)(EFTA) | Publication notice one time each in *Sewickley Herald, Butler Eagle, Johnstown Tribune-Democrat, The Evening Sun, Geauga Co. Maple Leaf, Ken-Ton Record Advertiser* and *Cheektowaga BEE*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Jackman v. Global Cash Access Holdings, Inc.*, 09-cv-897 (W.D.Pa.)(EFTA) | Publication notice one time in national edition of *USA Today* and one time in the monthly magazine *Casino Player*. Notice on website hosted by Class Counsel. |
| *Popovic v. USX Federal Credit Union*, 09-cv-631 (W.D. Pa.)(EFTA) | Publication notice one time in *Cranberry Eagle*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(EFTA) | Publication notice one time in *Pioneer Press Newspapers* in Lake Shore & North Shore. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Stone v. Corus Bank, N.A.*, 08-cv-1746 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times* and *Chicago Tribune*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |

| Case | Notice |
|---|---|
| *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Tribune* or *Sunday Sun Times*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by class counsel. |
| *Arbelo v. Charter One Bank*, 08-cv-1516 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times, Hoy* and *Pioneer Press*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times, Hoy, Chicago Reader* and *Polish Daily News*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(EFTA) | Publication one time in *Pioneer Press* in Northwest zone.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.)(EFTA) | Publication one time in *Chicago Tribune*, Targeted City Zone section.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |

Consistent with the Court's Opinion and Order, the Parties will be prepared to discuss an alternative notice paradigm at the hearing on April 15, 2011.

Respectfully Submitted,

/s/ Robert B. Calihan
Robert. B Calihan, Esq.

CALIHAN LAW
16 W. Main Street
Rochester, N.Y. 14614
(p)(585) 232-5291

/s/ Bruce Carlson
R. Bruce Carlson, Esquire
(*admitted pro hac vice*)
bcarlson@carlsonlynch.com

CARLSON LYNCH LTD
231 Melville Lane
P.O. Box 367
Sewickley, PA 15143
(p) (412) 749-1677
(f) (412) 749-1686

Counsel for Plaintiff