# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VALENE REED, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 10-cv-5642 (DLC) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CONTINENTAL GUEST SERVICES CORPORATION, | ) ) ) | Filed Electronically |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff, by and through her undersigned counsel, respectfully requests final approval of the proposed Class Action Settlement embodied in the Settlement Agreement that this Court preliminarily approved in its Order dated July 15, 2011 ("Preliminary Approval Order").[1]

As set forth below, the settlement is fair, adequate and reasonable and satisfies all applicable requirements for final approval. Pursuant to the Court's Preliminary Approval Order, a copy of the Summary Notice of Class Action Settlement was published on August 1, 2011, in the national edition of the *USA Today* and on August 1, 2011, in the *International Herald Tribune*.[2]

---

[1] The Settlement Agreement was attached as Exhibit 1 to the Parties' Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").

[2] *See* Declaration of Bruce Carlson in Support of Motion for Final Approval of Settlement Agreement ("Carlson Declaration") attached to the Final Approval Motion as Exhibit 1 at ¶ 4. Also, on July 22, 2011, Defendant provided notice of the settlement to the New York Attorney General, the Pennsylvania Attorney General and the United States Attorney General, as required by the Class Action Fairness Act, 28 U.S.C. §1715. *Id.*

In addition, the Full Notice of Certified Class Action Settlement was published on Class Counsels' website – www.carlsonlynch.com – from August 1, 2011, through the present.[3]   The last day to file objections to the Settlement was September 19, 2011.  This was also the last day to request exclusion from the Class.  No objections have been lodged against the Settlement by class members, and no class member has requested exclusion from the Settlement Class.[4]

## I.      BACKGROUND OF LITIGATION

Class Representative Valene Reed ("Plaintiff") filed the instant action on July 26, 2010. On behalf of herself and other putative class members, Plaintiff alleges that Continental Guest Services Corporation ("CGS" or "Defendant") violated the Fair and Accurate Credit Transaction Act , 15 U.S.C. § 1681 *et seq* ("FACTA").  Specifically, Plaintiff alleges that CGS violated 15 U.S.C. § 1681(g)(1) which provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

Defendant filed an Answer on October 19, 2010.  Immediately thereafter, the Parties commenced discovery, including third-party discovery which spawned motion practice in the United States District Court for the Western District of Pennsylvania.

Shortly after Plaintiff filed a motion to quash a third-party subpoena issued on behalf of Defendant in the Western District of Pennsylvania (and supporting memorandum of law), the Parties commenced settlement negotiations.  The Court imposed a December 17, 2010, filing deadline for Plaintiff's class certification motion, and the negotiations continued at the same time that Class Counsel prepared class certification papers in anticipation of the December 17 filing

---

[3] *See* Carlson Declaration at ¶ 4.

[4] *See* Carlson Declaration at ¶¶6-8.

deadline.

On December 8, 2010, Class Counsel travelled to New York to meet directly with defense counsel, and the management of Defendant.  The Parties made substantial progress toward a possible class settlement during this meeting, but were not able to conclude a potential deal at that time.

On December 20, 2010, Class Counsel travelled to New York to participate in a settlement mediation overseen by Magistrate Judge Maas.  The Parties made significant additional progress toward a settlement at this mediation, but were not able to finalize a deal at that time.  However, the Parties continued negotiations telephonically and by e-mail, and were able to arrive at the basic structure of a class settlement during the second week of January, 2011.

The parties ultimately executed a Class Action Settlement Agreement ("Settlement Agreement") on or about February 10, 2011.[5]

Pursuant to this agreement, the Parties have agreed to certification, for settlement purposes only, of the following Class:

> All persons who received electronically printed receipts from CGS at the point of sale or transaction, in a transaction occurring between June 3, 2008, and July 15, 2011, and wherein the receipt displayed (1) more than the last five digits of the person's credit card or debit card number, and/or (2) the expiration date of the person's credit card number. Expressly excluded from the Class are any individuals who suffered identity theft as a result of the FACTA violation at issue.

## II.   THE TERMS OF THE SETTLEMENT

Plaintiff alleges that between June 3, 2008 and July 15, 2011 Defendant's Point of Sale Equipment was not programmed to truncate the expiration dates from the receipts that were

---

[5] A copy of the Settlement Agreement is appended to the Joint Motion for Preliminary Approval as Exhibit A.

presented to their customers who made purchases with a credit or debit card.  As a result, approximately 75,000 different consumers were presented with receipts wherein the expiration date of their credit or debit card was displayed.  Defendant vehemently maintains that it did not willfully violate FACTA's truncation requirements and that, on the contrary, it took specific steps to fully comply with FACTA.

The Parties agree that neither Plaintiff, nor any putative Class Member, has suffered any actual monetary injury as a result of the FACTA claims at issue.

Against this backdrop, and in the interest of avoiding protracted and costly litigation, Defendant has agreed to a proposed settlement with the following basic terms:

Defendant has agreed to enter into a Consent Decree, pursuant to which it will remain in full compliance with the truncation requirements of FACTA.  A proposed Consent Decree will be submitted to the Court in advance of the Fairness Hearing.

In addition, Defendant  has agreed to provide to each Participating Claimant a Settlement Relief Voucher good for the following:  1)  a Disney Lion King show poster (retail value $15-$17 dollars;  2) a discount of $10 from any theatre ticket purchased through CGS;  3)  a $3.25 discount from any sightseeing service offered by CGS;  and,  4) a discount of $1.25 from any standard transportation service offered by CGS under $40, and a discount of $3.00 from any standard transportation service offered by CGS over $40.  These various Settlement Relief options are cumulative.  That is, a Settlement Relief Voucher shall entitle a Participating Claimant to any or all of the Settlement Relief options set forth above.

GUARANTEED DISTRIBUTION:   In the event that less than 15,000 Class Members submit claims, CGS will distribute Walt Disney Lion King posters to customers who pay for services with a debit or credit card at its concierge stations until a total of 15,000 posters have

been distributed.  Further, irrespective of how many claims are actually submitted, CGS

guarantees that it will offer 150,000 discount codes on its website for a one year period which

will entitle users who pay for services with a debit or credit card online to settlement relief

options 2-4 set forth above.

Further, Defendant has agreed to pay for the publication of Class Notice, a Plaintiff

incentive award in the amount of $1,500 and Class Counsel fees and allowable Litigation costs

and expenses of up to $74,000.

### III.   ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF FACTA'S TRUNCATION REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District courts throughout the country have routinely approved similar class

settlements of FACTA actions.  *See, e.g., Cicilline v. Jewel Food Stores, Inc.*, 2008 WL 895682

(N.D. Ill. March 31, 2008)(Dow, J.);  *Redmon v. Uncle Julio's of Illinois, Inc.*, 2008 WL 895682

(ND. Ill., March 7, 2008)(Castillo, J.);  *Dudzienski v. GMRI, Inc.*, 07-cv-3911 (N.D. Ill. July 17,

2009);  *Leowardy v. Oakley, Inc.*, 07-cv-53 (C.D. Cal. Nov. 24, 2008);  *Soulalian v. Int'l Coffee

& Tea, LLC*, 07-cv-502 (C.D. Cal. July 2, 2010);  *Todd v. Retail Concepts,* 2008 WL 3981593

(M.D. Tenn. Aug. 22, 2008);  *Halperlin v. Interpark, Inc.*, 07-cv-2161 (N.D. Ill. Jan. 28, 2009);

*Hall v. Music & Dance Theatre Chicago, Inc.*, 08-cv-7061 (N.D. Ill. Mar. 26, 2010);  *Pastore v.

Le Creuset of America, Inc.*, 09-cv-1139 (W.D. Pa.)(Cercone, J.);  *Hanlon v. Aramark Sports,

LLC,* 09-cv-465 (W.D. Pa.)(Lancaster, J.);  *Long v. Joseph-Beth Group, Inc.*, 07-cv-443 (W.D.

Pa.) (Cercone, J./Hay, M.J.); *Klingensmith v. Max & Erma's Restaurants*, 2007 WL 3118505

(W.D. Pa. Oct. 23, 2007) (Lenihan, J.);  *Sinatra v. Coventry Restaurant Systems, Inc d/b/a Hyde

Park Steak House.*, 07-cv-445 (W.D. Pa.) (Schwab, J.);  *Ehrheart v. Pro Nebraska, Inc. d/b/a Pro

Image*, 07-cv-447 (W.D. Pa.) (Lenihan, J.); *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's

*Craft Center*,  07-cv-321 (W.D. Pa.) (Schwab, J.); *Reed v. Whole Enchilada, Inc. d/b/a big*

*Burrito Restaurant Group*, 07-cv-357 (W.D. Pa.) (Fischer, J.); *Palamara v. Kings Family*

*Restaurants,* 07-cv-317 (W.D. Pa) (Lancaster, J.); *Curiale v. Hershey Entertainment & Resorts*

*Company*, 07-cv-651 (M.D. Pa.) (Kane, J.); *Ehrheart v. Pfaltzgraff Factory Stores, Inc.*, 07-cv-

01433 (E.D. Pa.) (Padova, J.);  ; *Carusone v. Joe's Crab Shack Holdings, Inc.*, 07-cv-320 (W.D.

Pa.) (Lenihan, J.);  *Goldin v. Uni-Marts, LLC*, 07-cv-666 (W.D. Pa.) (Fischer, J.).

 All of these cases were settled on terms similar to those in the proposed settlement that is

now before this Court.

### IV.    CERTIFICATION OF A SETTLEMENT<br>CLASS IS APPROPRIATE AND WARRANTED

The benefits of the proposed Settlement can be realized only through the certification of a

settlement class.  The Supreme Court of the United States has confirmed not only the viability,

but the desirability, of such settlement classes.  *See, Amchem Prods. V. Windsor*, 521 U.S. 591

(1997).  So, too, have the federal courts of appeal.  *See, e.g.*, *In re Prudential Insurance Co. of*

*America Sales Practices Litig.*, 148 F.3d 283 at 316 (3d Cir. 1998)("*Prudential II*");  *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  In addition, when considering certification in the

context of a settlement class, "courts must take a liberal rather than a restrictive approach."

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

In cases such as this, involving issues of consumer protection, courts have consistently

held that the use of the class action mechanism is "desirable and should be encouraged."

*Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980);  *Gordon v. Boden*, 586

N.E.2d 461 (Ill.App.Ct. 1991), *cert. denied.*, 506 U.S. 907 (1992)("[i]n a large and impersonal

society, class actions are often the last bastion of consumer protection").

A.    **The Rule 23(a) Prerequisites Are Satisfied**

The four prerequisites of Rule 23(a) are that:

(1)    the class be so numerous that joinder of all members is impracticable;

(2)    there be questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties be typical of the claims or defenses of the class; and,

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Frank v. Eastman Kodak Company*, 228 F.R.D. 174, 180 (W.D.N.Y. 2005).

1.    **Numerosity**

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The proper inquiry is whether such joinder is impracticable, not whether it is impossible.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993);  *see also,* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992)("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.")

Defendant acknowledges that there are thousands of transactions at issue.  With a class of this size, joinder would be impracticable and the existence of numerosity is, therefore, readily apparent.

###   2.        Commonality and Typicality

To maintain a class action, there must be "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2)(emphasis added).  Rule 23(a)(3) of the Federal Rules of Civil procedure requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  As the Second Circuit has explained:

> The crux of both requirements is to ensure that maintenance of a class action is economical and the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.  Typicality, by contrast, requires that the claims of the class representative by typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)(internal quotations and citations omitted).

Commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 153 (S.D.N.Y.2002) (citation and internal quotation marks omitted). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y.1992).  Here, Plaintiff's Complaint specifically lists the common issues implicated by her claims.  *See* Complaint at ¶ 37.

In addition, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Typicality need not be complete. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the

disputed issue of law or fact occupy essentially the same degree of centrality to the named

plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North*

*Commuter R.R.,* 191 F.3d 283, 293 (2d Cir.1999). *See also Bolanos v. Norwegian Cruise Lines*

*Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y.2002) ("Since the claims only need to share the same

essential characteristics, and need not be identical, the typicality requirement is not highly

demanding.").

     Thus,  Plaintiff submits the commonality and typicality requirements of Rule 23(a) are

met by the proposed settlement class.

### 3.    Adequacy of Representation

     The fourth and final prerequisite of Rule 23(a) is that "the representative parties…fairly

and adequately protect the interests of the class."  To determine whether a class representative is

adequate, the Second Circuit has instructed that courts should inquire whether: "1) plaintiff's

interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000).

     A class representative is "adequate" where he will "have an interest in vigorously

pursuing the claims of the class, and have no interests antagonistic to the interest of other class

members." *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  Here, there are no

conflicts of interest or other antagonisms between Plaintiff, on the one hand, and Class Members,

on the other.  All are individuals with the mutual incentive to establish the alleged violation of

FACTA.  All class members were allegedly impacted by the practices at issue in an identical

manner.

In addition, Plaintiff's counsel have provided fair and vigorous representation for the

Class.  Plaintiff's Counsel have substantial experience in similar consumer class action litigation

and have regularly been deemed to be adequate class counsel.[6]  *See Reyes v. Buddha-Bar NYC*,

2009 WL 5841177, at * 3 (S.D.N.Y. May 28, 2009)(adequacy requirement met where class

counsel has "an established record of competent and successful prosecution of large…class

actions, and the attorneys working on the case are likewise competent and experienced in the

area.").

Thus, the adequacy requirement of Rule 23(a)(4) is readily satisfied.

**B.**      **The Requirements Of Rule 23(b) Are Satisfied**

Rule 23(b) provides in pertinent part:

(b)      **Class Actions Maintainable.**  An action may be maintained as
a class action if the prerequisites of subdivision (a) are satisfied and,
in addition:

*****

(3)      the court finds that the questions of law or fact
common to the members of the class predominate
over any issues affecting only individual members,
and that a class action is superior to other available
methods for the fair and efficient adjudication of
the controversy.

These requirements are satisfied here for settlement purposes.

**1.**      **Common Questions Of Law And Fact Predominate Over**
**Questions Affecting Only Individual Members Of The Class**

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests

whether a proposed class is "sufficiently cohesive to warrant adjudication by representation."

521 U.S. at 594.  The Supreme Court then noted that the predominance requirement is easily met

---

[6] *See* Declaration of Bruce Carlson attached to the Preliminary Approval Motion as Exhibit 2.

in cases, such as this one, alleging a uniform violation of a consumer protection statute. *Id.* at 2250. Defendant does not oppose the issue for settlement purposes here. Thus, this case meets the requirement. *See*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Blackie v. Barrack,* 542 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues. *In re Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997)("*Prudential I*")(citing numerous other cases).

Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's alleged noncompliance with the credit/debit card truncation requirements of FACTA. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also*, *Prudential I*, 962 F.Supp. at 516.

Therefore, Plaintiff submits the predominance requirement is easily satisfied in this and other similar cases.

### 2. A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

It is well-accepted that the class-action mechanism generally provides the superior approach to handling statutory consumer protection claims. *See, e.g., Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981). Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already commenced by or against  members

of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (D)  the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a.    Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective.  The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed.  *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980);  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery.  Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful – such as identity theft – and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of credit and debit card users presents many of these elements.  The class action mechanism is meant to afford remedies to claimants

who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all, for the vast majority of Class Members. *Prudential I*, 962 F.Supp. at 522-23. This factor thus plainly supports certification for settlement.

> **b.     The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class**

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

> **c.     This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Shutts*, 472 U.S. at 811-812. Therefore, this element of the superiority analysis is satisfied.

> **d.     Manageability**

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *Prudential II,* 148 F.3d at 316 n. 57. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

## V.    THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A.    Final Approval Of The Settlement Is Favored By Strong Judicial Policy

In addition to determining whether the proposed settlement class satisfies the relevant requirements of Fed. R. Civ. P. 23(a) and (b), the Court must separately conclude that the proposed settlement is "fair, reasonable and adequate."  Fed.R.Civ.P. 23(e)(2).  Such a finding must be premised on a finding that the proposed settlement is both procedurally fair and substantively fair.  To determine procedural fairness, courts examine the negotiating process leading up to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts determine whether the proposed settlement's terms are "fair, reasonable and adequate" according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts should examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class actions.  *Wal-Mart Stores*, 396 F.3d at 116; *see also, In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").  As another court in the Second Circuit has noted, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### B.    The Settlement Is Procedurally Fair

The Settlement at issue here enjoys a presumption that it is fair and reasonable because it is the product of arm's-length negotiations conducted by experienced counsel who are fully

familiar with all aspects of class action litigation with the assistance of Magistrate Judge Maas.
*Clark v. Ecolab Inc.*, 2010 WL 1948198, at \*4 (S.D.N.Y. May 1, 2010)("[A] presumption of
fairness may attach to a class settlement reached in arms-length negotiations between
experienced, capable counsel…"); *Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini*, 258
F.Supp.2d 254, 257 (S.D.N.Y. 2003)(Absent "evidence of fraud or overreaching, courts have
consistently refused to act as Monday morning quarterbacks in evaluating the judgment of
counsel."); *see also, Manual for Complex Litigation, Third* § 30.43 (1995).  Although a court
must independently evaluate a proposed settlement, the court should credit the judgment of
experienced counsel in doing so.  Conversely, the reviewing court must avoid substituting its
image of an "ideal settlement" for the views of the "compromising parties," and must keep in
mind the fact that a settlement is, after all, "a compromise, a yielding of the highest hopes in
exchange for certainty and resolution."  *Prudential I,* 962 F. Supp. at 534.

As the Ninth Circuit has noted:

[T]he court's intrusion upon what is otherwise a private consensual agreement
negotiated between the parties to a lawsuit must be limited to the extent necessary
to reach a reasoned judgment that the agreement is not the product of fraud or
overreaching by, or collusion between, the negotiating parties, and that the
settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . .
The proposed settlement is not to be judged against a hypothetical or speculative
measure of what might have been achieved by the negotiators.

\*\*\*\*\*

Neither the district court nor this court is empowered to re-write the settlement
agreed upon by the parties.  We may not delete, modify, or substitute certain
provisions of the consent decree.  Of course, the district court may suggest
modifications, but ultimately, it must consider the proposal as a whole and as
submitted.  Approval must be given or withheld . . . .  In short, the settlement
must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*,
459 U.S. 1217 (1983).

Here, Counsel for the Parties are fully familiar with the facts and law applicable to this litigation and are well acquainted with the prosecution of class actions, generally, and with class-based consumer fraud claims, in particular.  In addition, before entering into the Settlement, Counsel for the Parties took into account, among other things, the nine factors that the Court of Appeals for the Second Circuit has identified as being relevant to the determination of whether a class settlement is fair, reasonable and adequate.  The evaluation of those factors resulted in Class Counsels' recommendation that the proposed settlement be accepted as fair, reasonable and adequate as is set forth below.

    **B.**    **The Settlement Is Substantively Fair, Reasonable And Adequate**

        **1.**    **The *Grinnell* Factors Support The Settlement**

The Court of Appeals for the Second Circuit has adopted a set of nine factors to be considered in determining whether a proposed settlement is fair, reasonable and adequate:  (1) the complexity, expense and duration of the litigation;  (2)  the reaction of the class to the settlement;  (3)  the stage of the proceedings;  (4)  the risks of establishing liability;  (5)  the risks of establishing damages;  (6)  the risks of maintaining a class action through trial;  (7)  the ability of the defendant to withstand a greater judgment;  (8)  the range of reasonableness of the settlement in light of the best recovery;  (9)  the range of reasonableness of the settlement in light of all the attendant risks of the litigation.  *Grinnell*, 495 F.2d at 463.

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable and adequate and should be approved.

        **a.**    **Continued Litigation Would Be Long, Complex
                         And Expensive**

Courts in the Second Circuit have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a

settlement.  Class actions are, by definition, complex.  *See e.g., In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001).

The FACTA class action claims at issue are, by definition, complex, and they implicate unsettled areas of applicable law in the Second Circuit. While Class Counsel would not have asserted the claims if they were not confident that they could make persuasive arguments in favor of both liability and class certification, they acknowledge that if the claims were fully litigated, Plaintiff would have to face considerable risks, particularly in the context of establishing that Defendant's violation of FACTA was "willful," which is a prerequisite to Plaintiff's ability to recover statutory damages.

The Settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of causing the truncation of personal consumer credit data on receipts provided to consumers at the point of sale. This result will be accomplished at least months earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally.

Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).  Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal process, as well as the substantial risks involved, a settlement at this time is beneficial to the Class.  *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D.Mass. 1987).

This factor thus plainly weighs in favor of approval of the proposed Settlement.

> **b.      The Reaction Of The Class To The Settlement Has Been Favorable**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy...In fact, the lack of objections may well evidence the fairness of the settlement." *Maley v. Del Global Techs.*, 186 F.Supp.2d 358, 362-63 (S.D.N.Y. 2002)(internal citation omitted); *see also, Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement").  Here, after adequate notice consistent with the Court's directive in the Preliminary Approval Order, there has been no objection to the Settlement and no request for exclusion from the Settlement.  This favorable response strongly recommends final approval of the Settlement.

> **c.      Plaintiff Is Able To Make An Informed Evaluation Of The Merit Of The Proposed Settlement**

The stage of the proceedings and the amount of investigation and/or discovery completed is another factor considered in determining the fairness, reasonableness and adequacy of the settlement.  "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010)(internal quotation omitted).

In this litigation, Plaintiff did not need to pursue extensive formal discovery to be in a position to evaluate the merit of the proposed Settlement.  In fact, it is well-settled that so-called formal discovery does not warrant talismanic significance.  The Third Circuit Court of Appeals has commented on this factor as follows:

> The objectors are correct that the Settlement was reached early in the litigation, with discovery itself at an early stage.  However, the merits of the liability case

18

> against Cendant were fairly clear . . . . Given the foregoing, it is unclear what depositions and interrogatories (with the requisite motions to compel) would have added to the liability considerations . . . .
>
> \*       \*       \*
>
> Therefore, although this litigation was settled at an early stage, because of the nature of the case Lead Plaintiff had an excellent idea of the merits of its case against Cendant insofar as liability was concerned at the time of settlement . . . .

*In re Cendant Corp. Litig.*, 264 F.3d 201, 236 (3d Cir. 2001); *see also, In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981)("[W]e are not compelled to hold that formal discovery was a necessary ticket to the bargaining table.  Because the plaintiffs did have access to information, this case cannot be characterized as an instance of the unscrupulous leading the blind."); *Bowling v. Pfizer*. 143 F.R.D. 141, 161 (S.D. Ohio 1992)("We can imagine an inadequate settlement with much discovery done;  similarly, we can envision an outstanding settlement with little discovery done.");  *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991)(plaintiffs were sufficiently informed about the strength of the case as a result of information obtained through informal discovery);  *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977)(approving settlement over objection that not enough discovery had occurred because plaintiffs were adequately informed despite fact that "very little formal discovery was conducted and that there is no voluminous record in this case.").

Here, Plaintiff and Class Counsel possessed sufficient information to conclude that not only is the proposed Settlement fair, reasonable and adequate, but it also serves the Congressional purposes reflected in the FACTA.  At the same time, the proposed Settlement represents a responsible resolution of this litigation.

This factor weighs in favor of approval of the proposed Settlement.

### d.      Plaintiff Faced Considerable Risk In Establishing Liability

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court

should balance the risks of establishing liability against the benefits afforded by the Settlement,

and the immediacy and certainty of an adequate recovery against the risks of continuing

litigation. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985),

*aff'd*, 789 F.2d 35 (2d Cir. 1986). As federal courts in this Circuit have consistently recognized,

litigation inherently involves risks, and the purpose of a settlement is to avoid the uncertainty of

a trial on the merits. *See, In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.

1997); *Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30,

2010). As another court in this Circuit has noted, "no matter how confident one may be of the

outcome of litigation, such confidence is often misplaced." *State of West Virginia v. Chas.

Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir.), *cert.

denied*, 404 U.S. 871 (1971). In the context of this litigation, with inherent questions regarding

whether Defendant's alleged violation of FACTA was "willful," the risks that Plaintiff face in

establishing liability are manifest, and this factor thus favors approval of the proposed

Settlement.

### e.      Plaintiff Faces Considerable Risk In Establishing A Sustainable Statutory Damage Award

If Plaintiff succeeded in establishing liability, significant risks would still remain with

respect to Plaintiff's ability to prove a ***sustainable*** class-based damage award. Specifically,

statutory damages in this case range from $100 to $1,000 per transaction. There are

approximately 75,000 transactions at issue. If liability were proven in this case, then Defendant

would face potentially annihilating class-wide statutory damage exposure. Plaintiff seriously questions whether damages of this magnitude, against this Defendant, against the backdrop of the statutory violation at issue, could withstand an almost certain Due Process challenge by Defendant. *State Farm Mutual Insurance Co. v. Campbell,* 538 U.S. 408 (2003).

In addition, Plaintiff's ability to prove a "willful" violation of FACTA is a prerequisite to **any** statutory damage award. As noted above, it is unclear that Plaintiff would be able to sustain this burden. This factor favors approval of the proposed Settlement.

### f.    The Risks Of Maintaining A Certified Class Through Trial

Plaintiff also faces the risk that the Court might perceive insurmountable difficulties in managing this case as a class action at trial. As required by *Amchem*, 521 U.S. 591, this Court must fully analyze whether Rule 23 has been satisfied in this case, with the exception of the manageability inquiry, which *Amchem* holds is irrelevant because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620.

Defendant would challenge certification if the case were to be litigated, and might appeal certification, should it be granted. That collateral challenge would prolong the litigation and increase the costs of adjudication and further burden the judicial system. Moreover, under Rule 23, a class may be decertified at any time during the litigation. As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits. 'To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it.'

*In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 317 (N.D. Ga. 1993)(internal citations omitted); *see also, Perry v. Fleet Boston*, 229 F.R.D. 105, 116 (E.D.Pa. 2005)("What

the district court giveth, the district court may take away:  the court may decertify or modify a

class at any time during the litigation should the class prove to be unmanageable.")

Thus, the risk faced by the possibility of decertification favors the proposed settlement.

**g.      Defendant's Ability To Withstand A Greater Judgment**

Plaintiff submits that this factor is neutral.

**h.      Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation**

The last two *Grinnell* factors are the reasonableness of the settlement in light of (i) the

best recovery, and (ii) all the attendant risks of the litigation.  The determination of whether a

settlement amount is reasonable "does not involve the use of a mathematical equation yielding a

particularized sum."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y.

2005)(internal quotation omitted).  "Instead, 'there is a range of reasonableness with respect to a

settlement – a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*

(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve

settlements even where the benefits obtained as a result of the settlement are less than those

originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a

single percent of the potential recovery."  495 F.2d at 455, n.2.

Here, the retail value of the Settlement Relief made available to the class is

approximately up to $34.50 per transaction. Multiplied over the approximate number of

transactions in dispute (75,000), the total amount of relief being offered to the class is

approximately $2,587,500.00. In addition, Defendant has paid the costs of publication notice to

the class and has agreed to pay reasonable counsel fees and costs for Class Counsel. Further,

Defendant has agreed to enter a consent decree which obligates it to remain in compliance with

FACTA's truncation requirements.

Plaintiff respectfully suggests that the proposed Settlement is fair, reasonable and

adequate and represents a responsible and appropriate compromise of this litigation.  Defendant

concurs.

## VI.      CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the

Proposed Final Approval Order and Proposed Final Judgment, approving the proposed

Settlement.

Respectfully Submitted,

/s/ Robert B. Calihan
Robert B. Calihan, Esquire
rcalihan@calihanlaw.com

CALIHAN LAW
16 W. Main Street
Rochester, N.Y. 14614
(p)(585) 232-5291

/s/ Bruce Carlson
R. Bruce Carlson, Esquire
(*admitted pro hac vice*)
bcarlson@carlsonlynch.com

CARLSON LYNCH LTD
231 Melville Lane
P.O. Box 367
Sewickley, PA 15143
(p) (412) 749-1677
(f) (412) 749-1686

Counsel for Plaintiff