UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VALENE REED, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 10-cv-5642 (DLC) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CONTINENTAL GUEST SERVICES CORPORATION, | ) ) ) | Filed Electronically |
| Defendant. | ) ) ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND
PAYMENT OF PLAINTIFF INCENTIVE AWARD

Plaintiff, Valene Reed, by her counsel, hereby moves for an award of attorneys' fees,

costs and a Plaintiff's incentive payment.  The fee and cost request is reasonable and appropriate

under all potentially applicable methods for evaluating attorney fee awards and the relevant

factors articulated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d

43, 50 (2d Cir. 2000).  In addition, the incentive payment requested for Plaintiff is also

reasonable and appropriate under well-established authority.

I.      BACKGROUND OF LITIGATION

Class Representative Valene Reed ("Plaintiff") filed the instant action on July 26, 2010.

On behalf of herself and other putative class members, Plaintiff alleges that Continental Guest

Services Corporation ("CGS" or "Defendant") violated the Fair and Accurate Credit Transaction

Act , 15 U.S.C. § 1681 *et seq* ("FACTA").  Specifically, Plaintiff alleges that CGS violated 15

U.S.C. § 1681(g)(1) which provides:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

Defendant filed an Answer on October 19, 2010.  Immediately thereafter, the Parties commenced discovery, including third-party discovery which spawned motions practice in the United States District Court for the Western District of Pennsylvania.

Shortly after Plaintiff filed a motion to quash a third-party subpoena issued on behalf of Defendant in the Western District of Pennsylvania (and supporting memorandum of law), the Parties commenced settlement negotiations.  The Court imposed a December 17, 2010, filing deadline for Plaintiff's class certification motion, and the negotiations continued at the same time that Class Counsel prepared class certification papers in anticipation of the December 17 filing deadline.

On December 8, 2010, Class Counsel travelled to New York to meet directly with defense counsel, and the management of Defendant.  The Parties made substantial progress toward a possible class settlement during this meeting, but were not able to conclude a potential deal at that time.

On December 20, 2010, Class Counsel travelled to New York to participate in a settlement mediation overseen by Magistrate Judge Maas.  The Parties made significant additional progress toward a settlement at this mediation, but were not able to finalize a deal at that time.  However, the Parties continued negotiations telephonically and by e-mail, and were able to arrive at the basic structure of a class settlement during the second week of January, 2011.

The parties ultimately executed a Class Action Settlement Agreement ("Settlement

2

Agreement") on or about February 10, 2011.[1]

Pursuant to this agreement, the Parties have agreed to certification, for settlement

purposes only, of the following Class:

> All persons who received electronically printed receipts from CGS at the point of
> sale or transaction, in a transaction occurring between June 3, 2008, and July 15,
> 2011, and wherein the receipt displayed (1) more than the last five digits of the
> person's credit card or debit card number, and/or (2) the expiration date of the
> person's credit card number. Expressly excluded from the Class are any
> individuals who suffered identity theft as a result of the FACTA violation at issue.

## II.   THE TERMS OF THE SETTLEMENT

Plaintiff alleges that between June 3, 2008 and July 15, 2011 Defendant's Point of Sale

Equipment was not programmed to truncate the expiration dates from the receipts that were

presented to their customers who made purchases with a credit or debit card.  As a result,

approximately 75,000 different consumers were presented with receipts wherein the expiration

date of their credit or debit card was displayed.  Defendant vehemently maintains that it did not

willfully violate FACTA's truncation requirements and that, on the contrary, it took specific

steps to fully comply with FACTA.

The Parties agree that neither Plaintiff, nor any putative Class Member, has suffered any

actual monetary injury as a result FACTA claims at issue.

Against this backdrop, and in the interest of avoiding protracted and costly litigation,

Defendant has agreed to a proposed settlement with the following basic terms:

Defendant has agreed to enter into a Consent Decree, pursuant to which it will remain in

full compliance with the truncation requirements of FACTA.  A proposed Consent Decree will

be submitted to the Court in advance of the Fairness Hearing.

---

[1] A copy of the Settlement Agreement is appended to the Joint Motion for Preliminary Approval as
Exhibit A.

In addition, Defendant has agreed to provide to each Participating Claimant a Settlement Relief Voucher good for the following: 1) a Disney Lion King show poster (retail value $15-$17 dollars; 2) a discount of $10 from any theatre ticket purchased through CGS; 3) a $3.25 discount from any sightseeing service offered by CGS; and, 4) a discount of $1.25 from any standard transportation service offered by CGS under $40, and a discount of $3.00 from any standard transportation service offered by CGS over $40. These various Settlement Relief options are cumulative. That is, a Settlement Relief Voucher shall entitle a Participating Claimant to any or all of the Settlement Relief options set forth above.

GUARANTEED DISTRIBUTION: In the event that less than 15,000 Class Members submit claims, CGS will distribute Walt Disney Lion King posters to customers who pay for services with a debit or credit card at its concierge stations until a total of 15,000 posters have been distributed. Further, irrespective of how many claims are actually submitted, CGS guarantees that it will offer 150,000 discount codes on its website for a one year period which will entitle users who pay for services with a debit or credit card online to settlement relief options 2-4 set forth above.

Further, Defendant has agreed to pay for the publication of Class Notice, a Plaintiff incentive award in the amount of $1,500 and Class Counsel fees and allowable Litigation costs and expenses of $74,000.

## III.   THE REQUEST FOR FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.   Applicable Legal Standards

In considering the appropriateness of an award of attorneys' fees and expenses in class action litigation, federal courts in the Second Circuit have utilized both the "lodestar method" and the "common fund method." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d

Cir. 2000).  With the lodestar method, the court multiplies what it deems to be a reasonable

hourly rate by the number of hours reasonably expended in the case.  With the common fund

method, the court awards the fee based upon a percentage of the common fund.  *Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Bd. of Elections*, 522 F.3d

182, 190 (2d Cir. 2008).  Under either approach, the court's analysis should be guided by the

following criteria:  "(1) the time and labor expended by counsel; (2) the magnitude and

complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation;

(5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50.

### B.    Lodestar Analysis

The lodestar and expenses for counsel here, as described in counsel's Declaration, is

$114,375.00 reflecting 266.20 hours of attorney and paralegal time, and costs of $5,470.46

"[T]he starting point for [a] Court's determination of a just and adequate fee to be paid to

class plaintiffs' counsel...is the number of hours expended in prosecution of the litigation, or the

lodestar."  *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F.Supp. 160, 163

(S.D.N.Y. 1989).  A "lodestar" calculation involves multiplying the number of hours expended

by a reasonable hourly rate for each attorney's time.  In using a lodestar calculation for

determining fees, courts often multiply the lodestar amount by a risk premium factor (or

"multiplier") based on the risk of recovery and other considerations, to arrive at a reasonable fee.

*See, e.g., Blum v. Stenson*, 465 U.S. 886 (1984).  In adjusting the lodestar, courts have also taken

into account such matters as the need to encourage experienced and able private counsel to

undertake such litigation.  *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 750-751

(S.D. N.Y. 1985).

### 1.    Hourly Rates

The hourly rates for Plaintiff's counsel are well within the range of what is reasonable and appropriate in this market.  The hourly rates are within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature.  *See Rodriguez v. Pressler & Pressler, L.L.P.*, CV-06-5103, 2009 WL 689056, at *1 (E.D.N.Y. Mar.16, 2009) (approving hourly rate of $450 in FDCPA case); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C .*, No. CV-04-2195, 2006 WL 3681138, at *9 (E.D.N.Y. Dec.11, 2006) (approving hourly rate of $420 in FDCPA case).

### 2.    Hours expended

In support of this Motion, Plaintiff has submitted spreadsheets delineating the time expended by Class Counsel to prosecute this litigation, broken down by attorney or paralegal, hourly billing rate, and general category of work performed.[2]  There was not time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  All time billed was reasonably necessary to achieve the successful outcome achieved for Plaintiff and the Class in this case.

Plaintiff respectfully submits that a fee and cost award of $74,000 is wholly appropriate in this case.

### C.    Common Fund Authority

When attorneys create a settlement fund for the common benefit of members of a class, "the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."  *Goldberger*, 209 F.3d at 47 (*citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)).  "The rationale for the doctrine is an

---

[2] Class Counsel maintain detailed contemporaneous time records which support the summary set forth in the spread sheet attached to Class Counsel's Declaration.

6

equitable one: it prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost." *Id.*

Analyzed under a traditional "common fund" analysis, there is substantial authority from the Second Circuit which supports the propriety of the amount of fees and costs negotiated by the Parties in this case. The requested fees and costs in the amount of $74,000.00 represents a percentage of the total aggregate value of the settlement of less than 3%. This represents a percentage well below fee percentages historically approved in class actions by courts sitting in this Circuit. *See e.g., Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002)(approving fees of 33.3% of settlement fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)(awarding attorneys' fees of 38.26 % of settlement fund); *In re Lloyd's American Trust Fund Litig.*, 2002 WL 31663577, at *15 (S.D.N.Y. Nov. 26, 2002)("In this district alone, there are scores of …cases where fees… were awarded in the range of 33.3 percent of the settlement fund."); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010)("Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is "consistent with the norms of class litigation in this circuit."); *Becher v. Long Island Light Co.*, 64 F.Supp.2d 174, 182 (E.D.N.Y. 1999)(approving fees of 33.33 percent of settlement fund). It is also important to note that smaller funds logically support a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys. *See In re Independent Energy Holdings PLC,* 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)(percentage of attorneys' fee award is inversely related to the amount of the settlement).

**D.   Application of the *Goldberger* Factors Confirms the Appropriateness and Reasonableness of the Requested Fee**

Application of the *Goldberger* factors strongly supports the fairness and reasonableness

7

of the requested fees and expenses, which Defendant does not oppose.  Accordingly, the Court

should approve the agreed-upon amount of fees and expenses.

### 1.    The time and labor expended by counsel

The first factor is the amount of time devoted to the case by Plaintiff's counsel.  The

proposed settlement of this case was achieved less than one year after the case was filed.

Therefore, by definition, Plaintiff's counsel does not have an inordinate number of hours logged

in this case.  That is by design and reflects a calculated philosophy employed by Plaintiff's

counsel in not only this case, but this litigation, generally.  Plaintiff's counsel have attempted to

achieve a fair and efficient result without overreaching.  Therefore, Plaintiff submits that this

factor supports approval.

### 2.    The magnitude and complexities of the litigation

The second factor also supports approval.  While the litigation has not been of long

duration, counsel have had to expend a substantial amount of time not only in this case, but in

similar cases, to best position the legal theories being prosecuted for a successful outcome.  The

complexity here derives primarily from the necessity of navigating adverse authority generated

in other similar cases.

### 3.    The risks of the litigation

Contingency risk is a consideration in setting reasonable attorneys' fees.  *Goldberger*,

209 F.3d at 53.  In fact, the "risk of success [is] 'perhaps the foremost' factor to be considered in

determining whether to award an enhancement" to a fee.  *Id.* at 54.  In this case, Class Counsel

undertook representation of Plaintiff on a contingency fee basis.

In addition, the risks of litigation on the merits were more than just hypothetical.  In the

context of this litigation, with inherent questions regarding whether Defendant's alleged

violation of FACTA was "willful," the risks that Plaintiff face in establishing liability are manifest.

### 4.    The quality of representation

Plaintiff's counsel are experienced attorneys with a long history of success in class action litigation, generally, and consumer class action litigation, specifically, as demonstrated by the Declaration of Counsel appended to the Preliminary Approval Motion.  Counsel have been routinely approved as class counsel in consumer and employment class litigation, by federal courts around the country.  In addition, the quality of representation is demonstrated by counsel's ability to achieve a fairly rapid and efficient resolution of the Class' claims.

### 5.    The requested fee in relation to the settlement

The amount of value created and the number of persons in relation to the requested fee benefited supports the fee request.  Those Class Members who care to participate in the settlement and return claims forms are entitled to receive Settlement Relief in the amount of $34.50 per transaction.  Furthermore, as described above, in this case, Plaintiff requests attorneys' fees and costs in the amount of $74,000.00 which represents less than 3% of the gross settlement benefit made available to the class – a percentage well below those awarded in other class actions.

### 6.    Public policy considerations

Courts in the Second Circuit have noted that public policy considerations favor the award of reasonable attorneys' fees in class action litigation.  *See In re Visa Check/Master Money Antitrust Litig.*, 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003)("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."); *In re Merrill Lynch Tyco*, 249 F.R.D. 124, 141-42 (S.D.N.Y. 2008)("In order to attract well

9

qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.") (internal quotation omitted); *Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358, 374 (S.D.N.Y. 2002)(" Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities…"); *In re NTL Inc. Sec. Litig.*, 2007 WL 1294377, at *8 (S.D.N.Y. May 2, 2007)(public policy favors an award of reasonable attorneys' fees while also "guard[ing] against providing a monetary windfall to class counsel to the detriment of the plaintiff class.").

In this case, the fees being sought by Plaintiff's counsel are reasonable when considered against their lodestar and the relief to the Class. In addition, while this amount adequately compensates counsel for their time, effort and the risks faced, it does not provide them with an exorbitant windfall.

Finally, numerous courts have noted that the absence of objections from class members is a strong indication of the reasonableness of a requested fee. *Maley*, 186 F.Supp.2d at 374 ("The reaction by members of the Class is entitled to great weight by the Court."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F.Supp. 97, 103 (S.D.N.Y. 1996)(an "isolated expression of opinion" should be considered "in the context of thousands of class members who have no expressed themselves similarly"). Here, the Parties provided notice to class members consistent with the Court's Preliminary Approval Order. The notice informed class members of the fee that Plaintiff's Counsel is now requesting. Notably, no class member has objected to this request.

Applying all of these factors, Plaintiff submits that the fee request is reasonable and appropriate.

IV.   **THE REQUESTED PLAINTIFF'S INCENTIVE AWARD IS REASONABLE AND APPROPRIATE**

As set forth in the Class Notice, Defendant has agreed to pay an incentive payment of $1,500.00 to Plaintiff. This payment is warranted as a matter of public policy and is well supported by applicable authority. *See, e.g., Chin v. RCN Corp.*, 2010 WL 1257594 (S.D.N.Y. Mar. 29, 2010)(approving incentive payment of $3,000 to plaintiff); *Parker v. Time Warner Entertainment Co., LP*, 631 F.Supp.2d 242 (E.D.N.Y. 2009)(approving incentive payment of $2,500 to each plaintiff).

V.   **CONCLUSION**

For all of these reasons, Plaintiff respectfully requests that the Court approve the fee and costs agreement negotiated by the Parties, as well as the negotiated incentive payment for Plaintiff.

Respectfully Submitted,

/s/ Robert B. Calihan
Robert B. Calihan, Esquire
rcalihan@calihanlaw.com
CALIHAN LAW
16 W. Main Street
Rochester, N.Y. 14614
(p)(585) 232-5291

/s/ Bruce Carlson
R. Bruce Carlson, Esquire
(*admitted pro hac vice*)
bcarlson@carlsonlynch.com
CARLSON LYNCH LTD
231 Melville Lane
P.O. Box 367
Sewickley, PA 15143
(p) (412) 749-1677

Counsel for Plaintiff

11